**In the United States District Court**
**For the District of Columbia**

World Class Construction Management    :
Group, LLC    :
825 Agee Terrace    :
Midlothian, Virginia 23114    :
   :
   and    :
   :
William Barrett, Jr.    :
825 Agee Terrace    :
Midlothian, Virginia 23114    :
   :
   Plaintiffs    :
   :
   v.    :
   :    CA No._____
William Youngblood    :
15480 Annapolis Road, Suite 202-185    :
Bowie, Maryland 20715    :
7000 High Bridge Road    :
Bowie, Maryland 20720    :
   :
   and    :
   :
Brynee K. Baylor, Esq.    :
2607 24th Street, N.W. Suite 1    :
Washington, D.C. 20008    :
   :
   and    :
   :
Brynee and Jackson, P.L.L.C.    :
Serve: Peggy Jackson    :
1025 Connecticut Ave. N.W. Suite 1202    :
Washington, D.C. 20036-0000    :
   :
   Defendants    :

## Complaint for Breach of Contract, Breach of Fiduciary Duty, and Negligence

Comes now World Class Construction Management Group, LLC, (Group) and William

Barrett, (Barrett), by and through undersigned counsel, and sues William A. Youngblood,

1

(Youngblood), Brynee K. Baylor, (Baylor), and Brynee & Jackson, PLLC, (PLLC), on the grounds hereinafter stated:

## Jurisdiction.

1. This Court has jurisdiction pursuant to: **28 U.S.C.A. § 1332**

## Parties

2. Group is an LLC organized under the laws of the Commonwealth of Virginia. It was, at all times relevant to this cause of action, doing business in Virginia.

3. Barrett is a resident of the Commonwealth of Virginia. He was a resident, of that Commonwealth, at all times relevant to this cause of action.

4. Youngblood is a resident of the State of Maryland. He was a resident, of that State, at all times relevant to this cause of action.

5. Baylor is an attorney licensed to practice law in the District of Columbia. She was, at all times relevant to this cause of action, doing business in the District of Columbia.

6. PLLC is a limited liability company organized under the laws of the District of Columbia. It was, at all times relevant to this cause of action, doing business in the District of Columbia.

## Facts

7. Youngblood wanted to purchase property, located in Prince Georges County, Maryland, and build a one hundred and twenty-one (121) room hotel on it. The estimated cost to purchase the land and build the hotel is approximately twenty million ($20,000,000,00), with an alleged required Five Hundred Thousand Dollar deposit ($500,000.00) allegedly needed to secure the $20,000,000,00 commercial loan needed to purchase the land and build the hotel. The property is approximately 2.5 acres in an area zoned C-S-C (Commercial Shopping Center),

situated on Allentown Road on Branch Avenue, approximately ½ miles from 1-95/495, approximately ¼ mile from Andrews Air Force Base, the home of Air Force One, and the Air Force's 89th Air Wing. **Exhibit # 1.**   The property allegedly received preliminary approval to build the 121 room Value Place Hotel on it.

8.   Youngblood secured $370,000.00, of the required $500,000,00 deposit, but was short $130,000.00.   **Exhibit # 2**. He requested a loan, from Barrett and Group, for the remaining $130,000.00.   They loaned Youngblood the money. They were instructed to send the money to Youngblood's attorney, Baylor and PLLC.   On January 17, 2011, Group and Barrett entered into an "Escrow Agreement" with PLLC. **Exhibit # 3**   After entering into the agreement, they wired $130,000.00 to PLLC's escrow account, pursuant to the instructions on Exhibit A of the escrow agreement. **Id**. Their money was not supposed to be disbursed until Youngblood's larger commercial loan had been approved and funded. The escrow agreement, on this point, stated:

> "....2. Release of Deposit. Escrow Holder will under no circumstances release all or any part of the deposit until all of the following have occurred:
>
> > a. Loan Provider/Facilitator will provide written confirmation to the investor that the loan has been approved and the funding will take place on or before February 1, 2011..."

PLLC also sent out a letter dated, January 18, 2011, "memorializing the process for finalizing the loan. **Exhibit # 4.**   That letter clearly reads, in pertinent part, as follows:

> "....2.) Upon confirmation that the loan has been completed, pursuant to the Escrow Agreements executed by the Investors, funds in the amount of One Hundred Thirty Thousand Dollars ($130,000.00USD) will be wired to HSBC London and facilitated through the Milan Group, LLC...."

9.   On January 18, 2011, a group calling itself "The Milan Group" sent a "To Whom It May Concern" letter guaranteeing payment of the $130,000.00, if funding is: **delayed or not completed for any reason...** **Exhibit # 5**.   This group, in an undated letter, indicated that the

funding of the loan would take place during the week of February 10, 2011. **Exhibit # 6**. It did not.

10. On March 1, 2011, Baylor wrote a "To Whom It May Concern" letter, under oath, attesting to the progress of the *funding*. **Exhibit # 7**. In her letter, she indicates that an alleged "MT 760" would be received, **"...within the next 24-48 hours..."**

11. On March 10, 2011, Baylor sent a letter to Sid Dugar allegedly providing him with a status report for the funding.  Baylor, in her letter, states: **"....I learned, from my client, The Milan Group, that the provider has sent their banker the confirmation email that we have been awaiting. This email is the last requirement before the MU760 is sent...." Exhibit # 8**

12. On March 11, 2011, Baylor's client, the alleged Milan Group, send a letter to Youngblood stating that the funds would be made available by March 30, 2011. **Exhibit # 9**. They were not.

13. PLLC and Baylor willful, wantonly, intentionally, negligently, and in breach of their fiduciary duty to Barrett and Group, sent Barrett and Group's $130,000.00, to their client, the Milan Group, for their benefit, before the *requirements* for disbursing the money were met and without first verifying, with the appropriate bank(s), that certified funds, or an irrevocable letter of credit, was in a bank for Youngblood, pursuant to the "escrow agreement" that PLLC had with Barrett and Group. **Exhibit # 3**.

14. Youngblood, Baylor, and PLLC, promised Barrett and Group that they would repay Barrett and Group, their $130,000.00, loan on or before February 20, 2011, **Exhibit # 2**, and if they did not, they would be in default and Barrett and Group would be paid a default fee of: $25,000.00, an additional $25,000.00 fee, if the larger loan commercial transaction did not close,

and repayment of their $130,000.00 loan. **Exhibit # 2.** Barrett and Group have requested the monies due them but they have not been paid. **Exhibit ## 10, 11**.

15. Youngblood, Baylor, and PLLC's actions are not only a breach of contract, breach of fiduciary duty, and negligence, but an elaborate scheme designed to deprive Barrett and Group of $130,000.00. Youngblood, Baylor and PLLC's actions are not only a breach of contract but they merge with and assume the character of a willful tort.

## Count I
## Breach of Contract

16. Barrett and Group incorporate, by reference, the allegations in paragraphs 1 through 15, into this Count as fully as plead herein.

17. Barrett and Group entered in a contract with Youngblood to loan him $130,000.00. The contract provided that the loan would be repaid on or before February 20, 2011, and if not, Barrett and Group would be entitled to a default fee of: $25,000.00, an additional $25,000.00, if Youngblood's larger commercial loan did not close, and repayment of their $130,000.00 loan.

18. Youngblood's larger commercial loan did not close; and he defaulted on repayment of Barrett and Group's loan. Youngblood is in breach of contract and he owes Barrett and Group $180,000.00. **Exhibit # 2**.

19. As a direct result and proximate cause of Youngblood's breach of contract, Barrett and Group are deprived of the money due them, while Youngblood, on the other hand, is being unjustly enriched in the amount he is obligated to pay Barrett and Group but he refuses to pay them. Youngblood's actions are not only a breach of contract but they merge with and assume the character of a willful tort.

**Wherefore, the premises considered**, Barrett and Group demand judgment against Youngblood in the amount of: $180,000.00, compensatory damages, $1,000,000,00, in punitive damages, plus

5

cost, pre-judgment and post-judgment interest, reasonable attorney fees, and any other damages this Court deems just and proper.

### Count II
### Breach of Contract

20.  Barrett and Group incorporate, by reference, the allegations in paragraphs 1 through 19, into this Count as fully as plead herein.

21.  Youngblood secured $370,000.00, of the required $500,000.00 deposit, but was short $130,000.00. **Exhibit # 2**. He requested a loan, from Group and Barrett, for the remaining $130,000.00. They loaned him the money. They were instructed to send the money to Youngblood's attorney, Baylor and PLLC. On January 17, 2011, Group and Barrett entered into an "Escrow Agreement" with PLLC., **Exhibit # 3.** After they entered into the escrow agreement, they wired $130,000.00 to PLLC's escrow account, pursuant to the instructions on Exhibit A of their escrow agreement. **Id**.  According to that agreement, their money was not supposed to be disbursed until the larger commercial loan had been approved and funded. The escrow agreement, on this point, states:

> "….2. Release of Deposit. Escrow Holder will under no circumstances release all or any part of the deposit until all of the following have occurred:
>
> > a. Loan Provider/Facilitator will provide written confirmation to the investor that the loan has been approved and the funding will take place on or before February 1, 2011…"

PLLC also sent out a letter dated, January 18, 2011, "memorializing the process for finalizing the loan. **Exhibit # 4.**  That letter clearly reads, in pertinent part, as follows:

> "….2.) Upon confirmation that the loan has been completed, pursuant to the Escrow Agreements executed by the Investors, funds in the amount of One Hundred Thirty Thousand Dollars ($130,000.00USD) will be wired to HSBC London and facilited through the Milan Group, LLC…."

22. Baylor and PLLC breached this escrow agreement, when they wired $130,000.00, of Barrett and Group's money, to their client, the so-called "Milan Group", before they were authorized to do so.

**Wherefore, the premises considered,** Barrett and Group demand judgment against Baylor and PLLC, joint and several, in the amount of $180,000.00, compensatory damages, plus cost, pre-judgment and post-judgment interest, reasonable attorney fees, and any other damages this Court deems just and proper.

## Count III
## Breach of Fiduciary Duty

23. Barrett and Group incorporate, by reference, the allegations in paragraphs 1 through 22, into this Count as fully as if plead herein.

24. Baylor and PLLC had a fiduciary duty to: Barrett and Group to only disburse their money pursuant to the requirements of their escrow agreement. They failed to do so and disbursed Barrett and Group's money, to their client, "the alleged "Milan Group, for the benefit of their client, without first assuring themselves that the requirements, for disbursing Barrett and Group's monies were met, and without first verifying, with the appropriate bank(s), that certified funds, or an irrevocable letter of credit, was in a bank for Youngblood, before disbursing Barrett and Group's money. **Exhibit # 3.**

25. As a direct and proximate cause of Baylor and PLLC's breach of fiduciary duty, Barrett and Group are deprived of $130,000.00.

**Wherefore, the premises considered,** Barrett and Group demand judgment against Baylor and PLLC, joint and several, in the amount of $130,000.00, in compensatory damages, $1,000,000.00, in punitive damages, cost, pre-judgment and post judgment interest, reasonable attorney fees, and any other damages this Court deems just and proper.

7

## Count IV
## Negligence

26. Barrett and Group incorporate, by reference, the allegations in paragraphs 1 through 25, into this Count as fully as if plead herein.

27. Baylor and PLLC had a duty to: Barrett and Group to only disburse their money pursuant to the requirements of the escrow agreement. They willfully, wantonly, intentionally, and negligently disbursed Barrett and Group's money, to their client, "the alleged "Milan Group, for the benefit of their client, without first assuring themselves that the requirements, for disbursing the monies, were met; and without first verifying, with the appropriate bank(s), that certified funds, or an irrevocable letter of credit, was in a bank for Youngblood, before disbursing Barrett and Group's money. **Exhibit # 3.**

28. As a direct and proximate cause of Baylor and PLLC's negligence, Barrett and Group are deprived of $130,000.00.

**Wherefore, the premises considered,** Barrett and Group demand judgment against Baylor and PLLC, joint and several, in the amount of $130,000.00, compensatory damages and $1,000,000,00, in punitive damages, pre-judgment and post-judgment interest, cost, reasonable attorney fees, and any other damages this Court deems just and proper.

## Jury Demand

29. The Plaintiffs demand a trial by jury.

Respectfully submitted,

*s/s Wendell C. Robinson*
Wendell C. Robinson
Bar No. 28273
4308 Georgia Avenue, N.W.
Washington, D.C. 20011
202-223-4470

8

# Exhibit # 1



## Executive Summary
## 6010 Allentown Road
## Camp Springs, Maryland

Description:  Approximately 2.5 acres zoned C-S-C (Commercial Shopping Center) that has received preliminary approvals for a 121 room Value Place Hotel

Location:  Property is located on Allentown Road near its intersection with Branch Avenue (Maryland Route 5) approximately ½ mile from I-95/495 the Capitol Beltway.  Additionally the property sits approximately ¼ mile form Andrews Air Force Base, home to Air Force One and the Headquarters to the Air Force's 89th Air Wing

Status:  Property has record plat approval and numerous planning review approvals for the permitting and construction of a 121 room Value Place Extended Stay Hotel

Utilities:  Both water and sewer are in Service Systems Area 3 and will be serviced by public systems

Potential Hotel Design:  Design plans show a 4 story, 121 room extended stay style hotel of 43,646 square feet. Guest rooms will have a kitchenette, with a 2 burner stove, full size refrigerator, sink, and microwave.

Andrews Air Force Base:  Andrews Air Force Base is spending over ONE BILLION DOLLARS ($1,000,000,000) on new infrastructure with an additional $60 million in stimulus approved projects.  Plans for the base include: a new 500,000 square foot conference center, 1000 housing units, $260 million health care facility/hospital and upgrades to existing facilities

Surrounding Area:  In addition to Andrews Air Force Base, the area is characterized by various commercial and retail oriented uses. There

## ANDREWS AFB/ALLENTOWN ROAD HOTEL

### CONSTRUCTION DESCRIPTION AND COSTS

| Description | |
|---|---|
| Exterior Wall | Hardy-Plank |
| No. of Stories | 4 |
| No. Guest Rooms | 121 |
| Gross Building Area | 43646 Sq. Ft. |
| Height Per Story | 10 feet |

| Cost Component | |
|---|---|
| Direct Construction Cost | $9,410,000 |
| Indirect Cost | $1,535,000 |
| Lease-up, Misc. & Contingencies | $825,000 |
| **Total Costs** | **$11,770,000** |
| **Cost Per Guest Room** | **$97,273** |
| **Cost Per SF** | **$270** |

| FF&E Costs | **$822,000** |
|---|---|
| Cost Per Guest Room | $6,793 |

### TOTAL PROJECT COST

| | |
|---|---|
| Direct and Indirect Building Cost | $11,770,000 |
| Land Cost | $1,512,000 |
| Cost of FF&E | $822,000 |
| **Total** | **$14,104,000** |
| Cost Per Room | $116,562 |

11-Jan-11

# Exhibit # 2

## MEMORANDUM OF UNDERSTANDING
### Between
### William A. Youngblood
### and
### World Class Construction Management ~~Service~~ *(GROUP LLC)*

This is an agreement between "William A Youngblood", hereinafter called Proprietor/Party A and "World Class Construction Management ~~Service~~", hereinafter called Investor/Party B. *GROUP LLC*

### I. PURPOSE & SCOPE

The purpose of this Memorandum Of Understanding ("MOU") is to clearly identify the roles and responsibilities of each party as they relate to the short term loan between the parties for the purpose of securing rights to invest in land for the development of an extended stay style hotels and mixed use development projects located in Prince George's County, Maryland.

Both Party A and Party B ensure that this commercial loan is handled in full compliance with all applicable Federal laws, rules, and regulations.

In particular, this MOU is intended to:

• Memorialize the terms of the investment.
• Establish the Repayment terms
• Delineate the terms of the loan.

### II. BACKGROUND
Proprietor is attempting to secure land for the purpose of developing a 121 room extended stay hotel near the gate of Andrews Air Force Base as well as a mixed-use development located within Prince George's County, Maryland. In an effort to secure these projects, Proprietor must render payment and close on both properties. In an effort to complete these transactions, Proprietor has been working on funding through counsel in the minimum amount of Twenty Million Dollars ($20,000,000 USD). In an effort to complete the funding, Proprietor must pay an initial deposit of Five Hundred Thousand Dollars ($500,000 USD) in order to close on the funding component of this transaction.

Proprietor is in need of the remaining One Hundred Thirty Thousand Dollars ($130,000 USD). Investor has agreed to provide the investment amount of the remaining funds, subject to terms and conditions listed below.

### III. RESPONSIBILITIES UNDER THIS MOU
Investor shall undertake the following activities:

1.) Execute the requisite agreements between the parties; and

2.) Deliver $130,000.00 via wire to Baylor & Jackson, PLLC by 1:00 p.m., Tuesday, January 18, 2011. TIME IS OF THE ESSENCE

Proprietor shall undertake the following activities:

1.) Return to Investor the amount of One Hundred Thirty Thousand Dollars ($130,000 USD) by or before February 10, 2011. This represents the initial investment of One Hundred Thirty Thousand Dollars ($130,000 USD) invested, and return on investment in the amount of One Hundred Thirty Thousand Dollars ($130,000 USD).

2.) Investor will be repaid through a line item at closing on the larger commercial loan and possibly through the first draw. In the event that Proprietor is unable to render the initial investment and above-detailed return on investment to Investor by or before February 15, 2011, Proprietor shall incur a default fee of Twenty Five Thousand Dollars ($25,000 USD) that shall be further due to Investor.

3) In the event the larger commercial loan transaction does not close, Proprietor agrees to return Investor's funds in the amount of One Hundred Thirty Thousand Dollars ($130,000 USD) and pay an additional fee of Twenty Five Thousand Dollars ($25,000 USD) for Investor's inconvenience. These funds shall be paid by or before February 20, 2011.

## IV. MODIFICATIONS TO THIS AGREEMENT
It is mutually understood and agreed by and between the parties that the only modification to this Agreement shall be made in writing and mutually agreed to by the Parties.

## V. FUNDING
This MOU includes the reimbursement of funds between the two parties. Funding requirements: Investor shall render One Hundred Thirty Thousand Dollars ($130,000.00 USD) via Wire Transfer to the law firm of Baylor & Jackson, PLLC. None of the funds used in this MOU are federal funds or funds being used to match other federal funds.

## VI. RECORD RETENTION
All records must be retained for three years from fiscal closure. This requirement applies to fiscal records, reports and transaction information. Supporting documentation shall be kept surrounding the entire transaction.

## VII. EFFECTIVE DATE AND SIGNATURE
This MOU shall be effective upon the signature of Parties A and B authorized officials. It shall be in force from January 18, 2011 until the transaction it completed. Parties A and B indicate agreement with this MOU by their signatures.

Agreed to this 17th day of January, 2011,

William A. Youngblood                    World Class Construction Management Service Group, LLC
Proprietor                               Investor

2

# Exhibit # 3

## BAYLOR & JACKSON, PLLC
## ATTORNEYS AT LAW
## ESCROW AGREEMENT

In this Attorney Escrow Agreement ("Agreement") the term "Escrow Holder" means Baylor &
Jackson, PLLC, a professional limited liability company, the term "Investor" means World Class
Construction Management Group, and the term "Loan Provider/Facilitator" means the Milan
Group, Inc.

### Background

· Investor World Class Construction Management Group,   has agreed to loan
Provider/Facilitator William Youngblood, One Hundred Thirty Thousand Dollars ($130,000.00
USD) for the fees that will be incurred in obtaining a larger loan.

· Investor has agreed to provide the Deposit to the Escrow Holder under this Agreement's terms
and conditions.

· Escrow Holder has agreed to hold the Deposit in the trust account established by Escrow
Holder at the coordinates and institution provided in Exhibit A to this Agreement.
The parties therefore agree as follows:

1. **Deposit**. Investor agrees to deposit One Hundred Thirty Thousand Dollars ($130,000.00 USD)
into the trust account maintained by Escrow Holder on the day the parties execute this
Agreement.

2. **Release of Deposit**. Escrow Holder will under no circumstances release all or any part of the
Deposit until all of the following have occurred:

Loan Provider/Facilitator will provide written confirmation to the Investor that the loan
has been approved and the funding will take place on or before February 1, 2011.

3. **Cancellation of Escrow**. Investor agrees and understands that escrow cannot be canceled
since the underlying transaction is already in progress.

4. **General Provisions**

a. **Time of Essence**. Time is of the essence with respect to the perfect performance,
occurrence, fulfillment and satisfaction of each and every term and condition of these
Instructions.

b. **Notices.** Any notice that is required or permitted under these Instructions must be in writing, signed by The Party giving the notice and must be delivered to Escrow Holder the other Parties by either: (1) certified mail postage prepaid return receipt requested; (2) facsimile with proof of transmission; or, (3) electronic mail. A notice not complying with this Section is ineffective. Notice shall be deemed given if by mail at the time of receipt; if by facsimile or electronic mail at the time of the completed transmission. Notices shall be given at the addresses, facsimile numbers or, electronic mail addresses as follows:

Escrow Holder: Baylor & Jackson, PLLC.
Address: 2607 24th Street NW Suite 1 Washington DC 20008
Attorney: Brynee Baylor, Esq.
Facsimile No.: 202-332-3093
Telephone No.: 202-332-7200
Electronic Mail: bbaylor@baylorjackson.com

c. **Governing Jurisdiction.** These Instructions shall be governed and all rights and liabilities under it determined in accordance with the laws of the District of Columbia and exclusively in the courts thereof.

d. **Execution by Counterparts.** This Agreement may be executed in any number of counterparts, each of which is considered an original.

Dated: January 17, 2011

Baylor & Jackson, PLLC (referred to as "Escrow Holder" throughout)

By:_____
   Brynee Baylor , Esq.
Its: Co-Managing Member

_____ (referred to as "Investor" throughout)

WORLD CLASS CONSTRUCTION MANAGEMENT GROUP. L L C
By:_____
Its:_____

The Milan Group, Inc. (referred to as "Provider/Facilitator throughout)

By:_____
   Frank Lorenzo

Its: Managing Member

**Exhibit A**

## Wire Instructions

Escrow/Trust Account Name:   Baylor & Jackson, PLLC
Bank Name:   Bank of America
Bank Address:   201 Pennsylvania Avenue, S.E.
   Washington, D.C. 20003
Bank Officer:   Arletnia Graham, Assistant Vice President
Bank Telephone: (202) 524-4600
SWIFT Code:   BOFAUS3N
Wire Routing Number: 026009593
ABA Routing Number:   054001204
Account Name:   Baylor & Jackson, P.L.L.C. Attorney Trust Account
Account Number:   003932764372

**Exhibit # 4**

 **Baylor & Jackson, P.L.L.C.**
*Attorneys and Counselors at Law*

2607 24th Street, N.W.
Suite 1
Washington, D. C. 20008

Tel: 202.332.7200
Fax: 202.332.3093
www.baylorjackson.com

January 18, 2011

To Whom It May Concern:

This is to provide you with a memorialized procedure for completing this loan process on behalf of William Youngblood. The following steps will be executed in order to secure funding for the transaction:

1.)  We will receive a letter from The Milan Group on behalf of the funding source indicating that the loan has been completed and funding will take place by or before February 1, 2011 through a settlement process.

2.)  Upon confirmation that the loan has been completed, pursuant to the Escrow Agreements executed by the Investors, funds in the amount of One Hundred Thirty Thousand Dollars ($130,000 USD) will be wired to HSBC London and facilitated through the Milan Group, LLC.

3.)  Youngblood will take part in the settlement and the loan will be funded within the first week of February 2011.

4.)  Immediately upon securing funds, Baylor & Jackson, PLLC will wire funds to Investors that will be sent in the amount of the previously agreed to returns on the executed Memorandum of Understanding.

5.)  The transaction will be successfully completed.

Thank you for your prompt attention to this matter.

Sincerely,

Brynee K. Baylor, Esq.

# Exhibit # 5



**THE MILAN GROUP** ———————————————  www.MilanTradingGroup.com

January 18, 2011

To Whom It May Concern:

This is to inform you that as CEO and Managing Member of The Milan Group, I, Frank Lorenzo, on behalf of the Milan Group hereby make the following representations:

1.   The Milan Group is facilitating the loan for the acquisition and financing of two commercial properties belonging to William Youngblood.

2.   In order to complete the funding, we hereby agree the guarantee funding by or before February 15, 2011.  In the event that funding is delayed or not completed for any reason, The Milan Group assumes full responsibility for the return of funds in the amount of One Hundred Thirty Thousand Dollars ($130,000.00 USD).

Thank you for your attention to this matter.

Very truly yours,

Frank Lorenzo
CEO and Managing Member
The Milan Group, LLC

London, UK  ●  British Virgin Islands, UK  ●  New York, USA  ●  New Hampshire, USA  ●  Pennsylvania, USA

# Exhibit # 6



**THE MILAN GROUP**

www.MilanTradingGroup.com

**VIA EMAIL TRANSMISSION**
Sid Dugar
45802 Shagbark Terrace
Sterling, Virginia 20166

RE: Status of the Loan

Dear Mr. Dugar:

The purpose of this letter is to provide you with a status of the funding of the project financed for Bill Youngblood's two commercial development projects. Based on my involvement in this transaction, I am confident that funding will take place during the week of February 10th. The next twenty-four hours are critical because the bank has been presented with two methods of delivery and procedures for confirmation of delivery of the instrument that we are awaiting.

As it stands, immediately upon securing the instructions from Deutsch Bank, Frankfurt, Germany, I welcome a call tomorrow after I have received confirmation of the bank's response so that we can provide you with a more precise date of funding.

Thank you for your attention to this matter and I will have Brynée K. Baylor, Esquire initiate tomorrow's correspondence.

Very truly yours,

Frank Lorenzo

cc: William Barrett, Jr.

London, UK ● British Virgin Islands, UK ● New York, USA ● New Hampshire, USA ● Pennsylvania, USA

# Exhibit # 7

## Baylor & Jackson, P.L.L.C.
### Attorneys and Counselors at Law

2607 24th Street, NW
Suite 1
Washington, D.C. 20008

Tel: 202.332.7200
Fax: 202.332.3093
www.baylorjackson.com

March 1, 2011

To Whom It May Concern:

RE:     *Attorney Attestation Letter*

Dear Sirs:

On this 1st day of March, 2011, I, Brynée K. Baylor, Esquire, am writing to attest to the progress that has been made as of 12:00pm EST today, on the instant transaction. As of today's date, the Milan Group, LLC has successfully completed the due diligence inquiry. Additionally, the bankers have completed the bank-to-bank email confirming the credit lines. Currently, the pre-approved language for the undertaking is being completed on the Milan Group's banker's letterhead. The next step is to receive the contract from the provider, have the provider open the sub-account for the Milan Group, LLC and then send the MT 760. We are expecting this to take place within the next 24-48 hours. I have personally observed the emails confirming the above-mentioned emails.

I, Brynée K. Baylor, Esquire hereby attest that the following is true and has been verified.

Brynée K. Baylor

In Washington DC, on the 1st day of MARCH, 2011, before me, a Notary Public in and for the above state and county, personally appeared **Brynée K. Baylor** known to me or proved to be the person named in and who executed the foregoing instrument, and being first duly sworn, such person acknowledged that he executed said instrument for the purposes therein contained as his free and voluntary act and deed.

NOTARY PUBLIC

My commission Expires: _____

Denise Saucedo
Notary Public, District of Columbia
My Commission Expires 9/14/2011

(SEAL)

**Exhibit # 8**

 **Baylor & Jackson, P.L.L.C.**
*Attorneys and Counselors at Law*

2607 24ᵗʰ Street, N.W.
Suite 1
Washington, D.C. 20008

Tel: 202.332.7200
Fax: 202.332.3093
www.baylorjackson.com

March 10, 2011

Sid Dugar
45802 Shagbark Terrace
Sterling, Virginia 20166

Dear Sid:

I am writing this letter to inform you of the most recent status of funding. I learned from my client, The Milan Group, that the provider has sent their banker the confirmation email that we have been awaiting. This email was the last requirement before the MT760 is sent.

We expect that the 760 will happen in the next 24 hours. Upon receipt of the 760, the instrument delivery will take place. Upon receipt of the instrument, the funds will be released.

We are in the final stages and will update you immediately upon receipt of new information.

Thank you for your attention to this matter.

Very truly yours,

Brynee K. Baylor

BKB:tm

**Exhibit # 9**



**THE MILAN GROUP** ——————————— www.MilanTradingGroup.com

March 11, 2011

William Youngblood
15480 Annapolis Rd.
Suite 202-185
Bowie, MD  20715

**RE:    *MT760 Status***

Dear Mr. Youngblood:

This letter is to inform you that we are in the final stages of the project funding transaction.

I have been informed as of today that on Monday, March 14, 2011, that the final bankers email permitting the MT760 to be sent will be issued.  As such, it is my representation that funds will be made available to you by or before March 30, 2011.

Thank you for your attention to this matter.

Sincerely,

Frank Lorenzo
The Milan Group

# **Exhibit # 10**

Dated: July 26, 2011

William Youngblood
7000 High Bridge Road
Bowie, MD 20720

Ref: Loan per the MOU signed January 17, 2011

Dear William,

It has been more than 6 months when the funds were loaned to you to be deposited to the Escrow account of Baylor and Jackson PLLC Attorney Trust Account for your *Project (Exhibit A)*. According to the Memorandum of Understanding (MOU), once the closing was completed by the Milan Group (Thursday, June 23, 2011-Exhibit B), the money would be returned to investors.

Due to my Bonding requirements I am not allowed to loan money to anyone for more than 6 months, I would like to request the funds that was given to you per the MOU signed back in January 17, 2011 as per the below stipulation.

You have 15 days to do one of the following whichever is the greater of:

1. Return the Principal in the amount of $130,000 along with the Investment Return for $130,000 and the Penalties and Fees as discussed and negotiated.

2. Return the Principal in the amount of $130,000 along with the Penalty as discussed.

Please deposit the funds to the Bank Account mentioned below by or before Aug 10, 2011

**BANK NAME: SUNTRUST BANK**
**ACCOUNT NAME: World Class Construction Mgmt Group LLC**
**ACCOUNT NUMBER: 1000052698353**

If you have any further questions please feel free to let me know.

Respectfully Yours,

William Barrett Jr.
World Class Construction Management
Group, LLC

CF: Ms. Brynee K. Baylor, Baylor & Jackson, P.L.C.C.
    Mr. Frank Lorenzo, Milan Group

Exhibit A: MOU, dated January 17, 2011
Exhibit B: Memo dated July 1, 2011, Baylor & Jackson, P.L.L.C.



# World Class Construction
# Management Group, LLC

Dated: August 1, 2011

**Exhibit 11**

William Youngblood
7000 High Bridge Road
Bowie, MD 20720

Ref: Loan per the MOU signed January 17, 2011

Dear William,

It has been more than 6 months when the funds were loaned to you to be deposited to the Escrow account of Baylor and Jackson PLLC Attorney Trust Account for your Project (Exhibit A). According to the Memorandum of Understanding (MOU), once the closing was completed by the Milan Group (Thursday, June 23, 2011-Exhibit B), the money would be returned to investors.

Due to my Bonding requirements I am not allowed to loan money to anyone for more than 6 months, I would like to request the funds that was given to you per the MOU signed back in two (2) weeks per the below stipulation.

You have 15 days to do one of the following whichever is the greater of:

1. Return the Principal in the amount of $130,000 along with the Investment Return for $130,000 and the Penalties and Fees as discussed and negotiated.
2. Return the Principal in the amount of $130,000 along with the Penalty as discussed.

Please deposit the funds to the Bank Account mentioned below in two (2) weeks.

**BANK NAME: SUNTRUST BANK**
**ACCOUNT NAME: World Class Construction Mgmt Group LLC**
**ACCOUNT NUMBER: 1000052698353**

If you have any further questions please feel free to let me know.

Respectfully Yours,
William Barrett Jr.
World Class Construction Management
Group, LLC

CF: Ms. Byrnee K. Baylor & Jackson, P.L.C.C.
    Mr. Frank Lorenzo, Milan Group

Exhibit A: MOU, dated January 17, 2011
Exhibit B: Memo dated July 1, 2011, Baylor & Jackson, P.L.L.C.

825 Agee Terrace, Midlothian, Virginia 23114
Phone: 804-245-4724    Fax: 804-594-0780